IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CAPE FLATTERY LIMITED, | ) | CIVIL NO. 08-00482 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART PLAINTIFF'S |
| vs. | ) | MOTION TO STRIKE |
| | ) | ALLEGATIONS AND |
| TITAN MARITIME LLC dba TITAN | ) | AFFIRMATIVE DEFENSES IN |
| SALVAGE, A CROWLEY | ) | DEFENDANT TITAN MARITIME, |
| COMPANY, | ) | LLC, DBA TITAN SALVAGE, A |
| | ) | CROWLEY COMPANY'S ANSWER |
| Defendant. | ) | [DOC. 61] TO COMPLAINT OF |
| | ) | PLAINTIFF CAPE FLATTERY |
| _____ | ) | LIMITED |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE ALLEGATIONS AND AFFIRMATIVE DEFENSES IN DEFENDANT TITAN MARITIME, LLC, DBA TITAN SALVAGE, A CROWLEY COMPANY'S ANSWER [DOC. 61] TO COMPLAINT OF PLAINTIFF CAPE FLATTERY LIMITED**

## I. <u>INTRODUCTION</u>

On October 24, 2008, Plaintiff Cape Flattery Limited ("Plaintiff")

filed a Complaint asserting that Defendant Titan Maritime, LLC dba Titan Salvage,

a Crowley Company ("Defendant") was grossly negligent in salvaging Plaintiff's

boat, the M/V CAPE FLATTERY ("the Vessel").  The Complaint seeks (1) a

declaration that Plaintiff is entitled to indemnity or contribution from Defendant

under the Oil and Pollution Act of 1990 ("OPA 90"), 33 U.S.C. § 2701 *et seq.*; and

(2) injunctive relief enjoining Defendant from requesting arbitration or seeking an

Anti-Suit Injunction in the courts of England to compel arbitration pursuant to the parties' Salvage Contract dated February 4, 2005 (the "Agreement"), which provides that disputes arising under the Agreement shall be settled by arbitration in London, England with English law and practice to apply.

In response to the Complaint, Defendant filed a Motion to Compel Arbitration.  On March 19, 2009, the court denied the Motion on the basis that the dispute does not fall within the scope of the agreement to arbitrate.  *See Cape Flattery LTD v. Titan Mar. LLC*, 607 F. Supp. 2d 1179 (D. Haw. 2009).  On July 26, 2011, the Ninth Circuit affirmed.  *See Cape Flattery LTD v. Titan Mar. LLC*, 647 F.3d 914 (9th Cir. 2011), *certiorari denied*, 132 S. Ct. 1862 (2012).  Despite these Orders determining that the parties' dispute is not subject to arbitration, on April 26, 2012 Defendant filed an Answer asserting various affirmative defenses based on the parties' Agreement and its arbitration provision.

Currently before the court is Plaintiff's Motion to Strike Allegations and Affirmative Defenses in Defendant's Answer.  Plaintiff asserts that Defendant's affirmative defenses based on the Agreement are precluded by the March 19, 2009 Order and July 26, 2011 Opinion, and that other defenses are insufficiently pled.  Based on the following, the court GRANTS in part and DENIES in part Plaintiff's Motion to Strike.

## II.  BACKGROUND

**A.     Allegations in the Complaint**

As alleged in the October 24, 2008 Complaint, on February 2, 2005, the Vessel ran aground on a submerged reef off Barbers Point, Oahu, Hawaii.  Doc. No. 1, Compl. ¶ 4.  In response, the United States Coast Guard issued a Notice of Federal Interest in connection with the grounding of the Vessel and activated Unified Command to respond to the threat of oil discharge.  *Id.* ¶ 5.

On February 4, 2005, Pacific Basin Shipping (HK) Ltd., acting on behalf of Plaintiff as owner of the Vessel, signed an Agreement for Defendant to salve (*i.e.*, refloat) the Vessel.  *Id.* ¶ 21.  The Agreement includes a clause whereby the parties agree to arbitrate any disputes "arising under" the Agreement in London under English Law.  *Id.* ¶ 23.

Defendant participated in removing the Vessel from the reef and eliminating the threat of oil discharge.  *Id.* ¶ 6.  Plaintiff alleges that Defendant acted with gross negligence by using tugs with submerged heavy tow lines which damaged the coral reef, even though Defendant was expressly warned not to use such tow lines and had previously used floating tow lines that would not cause coral damage.  *Id.* ¶¶ 8-11.  On February 10, 2005, the United States Coast Guard designated Plaintiff the responsible party for costs and damages arising from the

response to the oil spill threat pursuant to OPA 90.[1]  *Id.* ¶ 13.  On August 8, 2008,

Plaintiff was informed that it may be liable for restoration of the coral in an amount

in excess of $15 million.  *Id.* ¶ 15.

Based on these factual allegations, the Complaint asserts two claims.

The first claim, for declaratory relief, seeks a judgment declaring that Defendant's

use of submerged lines during the salve of the Vessel was grossly negligent such

that Plaintiff has the right to indemnity and contribution from Defendant, as is

authorized by OPA 90, 33 U.S.C. § 2709.[2]  *Id.* ¶¶ 18-20.  The second claim, for

injunctive relief, seeks to prevent Defendant from either requesting arbitration or

seeking an Anti-Suit Injunction in the courts of England to compel Plaintiff to

arbitrate its claims.  *Id.* ¶ 25.  The Complaint asserts that Plaintiff's gross

negligence claim does not "arise under" the Agreement and therefore is not subject

to arbitration.  *Id.* ¶ 23.

---

[1]  OPA 90, 33 U.S.C. § 2702(a), provides that a "responsible party for a vessel . . . which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages . . . that result from such incident."  Covered removal costs and damages include, among other things, removal costs incurred by the United States, damages for injury or loss of natural resources and subsistence use of natural resources, and net costs of providing increased or additional public services during or after removal activities.  33 U.S.C. § 2702(b).

[2]  OPA 90, 33 U.S.C. § 2709 provides that "[a] person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law."

**B.      Events in the District Court After the Complaint**

With its Complaint, Plaintiff also filed an Ex Parte Motion for

Temporary Restraining Order ("TRO") to enjoin Defendant from seeking

arbitration or an Anti-Suit Injunction in the English Courts to compel Plaintiff to

arbitrate.  Doc. No. 6.  On November 4, 2008, the parties entered into a Stipulation

whereby Plaintiff withdrew its Motion for TRO without prejudice and Defendant

agreed not to initiate arbitration under the Agreement or seek an Anti-Suit

Injunction in the English courts "unless and until this Court grants a Motion to

Compel Arbitration and/or Motion to Dismiss to be filed by Defendant."  Doc. No.

15 at 2-3.  The Stipulation further provides that "[n]othing in this stipulation is to

be construed as a waiver of Defendant's right to move this Court to compel

arbitration or of any other defense."  *Id.* at 3.

Defendant subsequently filed its Motion to Compel Arbitration, which

this court denied on March 19, 2009.  The March 19, 2009 Order explained that

under Ninth Circuit law, the provision in the Agreement providing that the parties

would arbitrate any dispute "arising under" the Agreement is narrow and "reaches

only those disputes between the parties that relate to the interpretation and

performance of the Agreement itself."  *Cape Flattery*, 607 F. Supp. 2d at 1188.

The March 19, 2009 Order found that Plaintiff's assertion that Defendant was

grossly negligent in salving the Vessel does not relate to the interpretation and

performance of the Agreement because this alleged breach of duty is wholly

separate from any duties arising under the Agreement.  The March 19, 2009 Order

reasoned:

> Because damage to the reef as a result of using
> submerged tow lines was clearly foreseeable, and
> because Plaintiff is strictly liable under the law for
> damage to the reef, the court concludes that a duty of care
> was owed by Defendant to Plaintiff.
> This duty -- to prevent foreseeable damage to the
> coral reef -- is separate from and above and beyond
> Defendant's duties under the Agreement. . . .  The parties
> point to no Agreement provision that Defendant allegedly
> breached -- the Agreement is silent regarding what tow
> lines Defendant must use, how precisely Defendant must
> salve the Vessel, and whether Defendant must take
> precautions to prevent harm to the coral reef.  Simply put,
> finding a breach of Defendant's duty to prevent
> foreseeable harm to the reef will not require determining
> whether Defendant performed under the Agreement.
> Defendant's duty to prevent foreseeable harm to the coral
> reef exists regardless of the Agreement.

*Id.* at 1190 (footnotes omitted).  As a result, the March 19, 2009 Order concluded

that Plaintiff raised claims "sound[ing] wholly in tort [that] do not relate to 'the

interpretation and performance' of the Agreement" such that the dispute is not

arbitrable.  *Id.*

## C.     The Ninth Circuit's July 26, 2011 Opinion

Defendant appealed the March 19, 2009 Order to the Ninth Circuit, which affirmed in a July 26, 2011 Opinion.  The July 26, 2011 Opinion confirmed that the arbitration provision in the Agreement must be read narrowly and therefore had "no difficulty concluding that the present dispute is not arbitrable." *Cape Flattery*, 647 F.3d at 923.  The July 26, 2011 Opinion reasoned:

> The present dispute does not turn on an interpretation of any clause in the contract.  As the district court noted, "[t]he parties point to no Agreement provision that Defendant allegedly breached -- the Agreement is silent regarding what tow lines Defendant must use, how precisely Defendant must salve the Vessel, and whether Defendant must take precautions to prevent harm to the coral reef." *Cape Flattery*, 607 F. Supp. 2d at 1190 (footnote omitted).  Nor does the dispute turn on Titan's performance under the contract.  Instead the dispute involves a tort claim based on Hawaii and maritime tort law, incorporated as part of the Oil Pollution Act of 1990, and limited by that federal statute to grossly negligent acts.

*Id.* at 924.

Defendant's petitions for rehearing *en banc* and for a writ of *certiorari* were denied.  *See Titan Maritime, LLC v. Cape Flattery Ltd.*, 132 S. Ct. 1862 (2012).

///

**D.    Defendants' Answer to the Complaint**

After the resolution of the appeal on Defendant's Motion to Compel

Arbitration, Defendant filed an Answer on April 26, 2012.  Doc. No. 61.

The Answer includes several affirmative defenses that invoke the

Agreement, including:

> **TWELFTH AFFIRMATIVE DEFENSE**
> 38.    Defendant alleges and incorporates by reference as
> though fully set forth herein, each and every defense and
> limitation contained in or made available to Defendant by
> the terms of the Salvage Contract.
>
> **THIRTEENTH AFFIRMATIVE DEFENSE**
> 39.    Defendant alleges and incorporates by reference as
> though fully set forth herein, each and every defense and
> limitation available to it under English law, being the
> governing law of the Salvage Contract, including but not
> limited to limitation of liability under section 185 of the
> Merchant Shipping Act of 1995 (UK) which incorporates
> the International Convention on Limitation of Liability
> for Maritime Claims 1976.
> . . .
> **FIFTEENTH AFFIRMATIVE DEFENSE**
> 41.    Defendant expressly claims the benefits of any
> arbitration or forum selection clauses in the underlying
> Salvage Contract.  In answering Plaintiff's Complaint,
> Defendant does not mean to waive or limit its rights to
> later pursue this matter in arbitration or to seek to
> dismissal or transfer venue of this action to the Court
> agreed to by the parties in the forum selection clause.
> . . .
> **TWENTIETH AFFIRMATIVE DEFENSE**
> 46.    Defendant alleges, without admitting any duty
> owed to Plaintiff, that at all material times during the

salvage of the Vessel it exercised due diligence and acted in a reasonable and prudent manner, complying with all applicable standards of care, under the Salvage Contract, which is governed by English law, and/or the orders and directions of (1) the Plaintiff, as the [Responsible Party under OPA 1990], its Qualified Individual, Spill Management Team and/or other agents and designated representatives; (2) the United States of America, through [the Federal-On-Scene Coordinator] and/or its agents and designated representatives including but not limited to the [United States Coast Guard]; and/or (3) the State of Hawaii through the [State-On-Scene Coordinator] and/or its agents and designated representatives.

The Answer also generally denies the allegations supporting Plaintiff's claim for injunctive relief seeking to prevent Defendant from either requesting arbitration or seeking an Anti-Suit Injunction in the courts of England. *Id.* ¶¶ 21-26.

The other affirmative defenses at issue in Plaintiff's Motion to Strike are the following:

**FOURTEENTH AFFIRMATIVE DEFENSE**
40.    Defendant expressly claims that it is entitled [to] exoneration from or limitation of liability under the Limitation of Liability Act, 46, U.S.C. §§ 30501, et seq., to any and all of Plaintiff's claim.
. . .
**SEVENTEENTH AFFIRMATIVE DEFENSE**
43.    Plaintiff has failed to join indispensable parties, specifically the United States of America and/or the State of Hawaii, given that Defendant, at all material times during the salvage of the Vessel, acted with approval

9

> from and under the orders and directions and/or was
> otherwise directed by the United States of America,
> through the [the Federal-On-Scene Coordinator] and/or
> its agents and designated representatives including but
> not limited to the [United States Coast Guard]; and/or the
> State of Hawaii, through the [State-On-Scene
> Coordinator] and/or its agents and designated
> representatives.

*Id.* ¶¶ 40, 43.

## E.     Plaintiff's Motion to Strike

On May 17, 2012, Plaintiff filed its Motion to Strike Defendant's

Answer pursuant to Rule 12(f).  Doc. No. 64.  Defendant filed an Opposition on

July 2, 2012, Doc. No. 83, and Plaintiff filed a Reply on July 9, 2012.  Doc. No.

85.  A hearing was held on July 23, 2012.

## III.  STANDARD OF REVIEW

Rule 12(f) provides that the district court "may strike from a pleading

an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter."

A defense is insufficient where "there are no questions of fact, [] any

questions of law are clear and not in dispute, and []under no set of circumstances

could the defense succeed."  *S.E.C. v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal.

1995) (internal quotation and citation omitted).  "Immaterial matter is that which

has no essential or important relationship to the claim for relief or the defenses

being plead." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1382, at 706-07 (1990)).  In comparison, "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*  Finally, "[r]edundant matter is defined as allegations that constitute a needless repetition of other averments or are foreign to the issue." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (quotations and citations omitted).

The purpose of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fogerty*, 984 F.2d at 1527).  With that said, however, 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Kohler v. Islands Restaurants, LP*, 280 F.R.D. 560, 563-64 (S.D. Cal. 2012) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003)).  As a result, "[m]atter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D.

Cal. 2005) (quoting *Cal. Dept. of Toxic Substances Control v. Alco Pac., Inc.*, 217

F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)); *see also Sands*, 902 F. Supp. at 1166

(stating that "courts are reluctant to determine disputed or substantial questions of

law on a motion to strike").

      Whether to strike affirmative defenses is within the court's discretion.

*Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990).

## IV. DISCUSSION

      Plaintiff argues that Defendant's (1) affirmative defenses based on the

Agreement must be stricken because they are barred by law of the case and

therefore are immaterial, impertinent and/or redundant;[3] (2) affirmative defense

based on the Limitation of Liability Act is insufficiently pled because Defendant

cannot meet the requirements for its application; and (3) affirmative defense for

failure to join indispensable parties fails as a matter of law.  Defendant agrees to

withdraw its affirmative defense for failure to join indispensable parties, *see* Doc.

No. 83, Def.'s Opp'n at 17-18, but otherwise argues that it can assert defenses

---

    [3] Plaintiff's Motion also seeks to strike Defendant's response to Plaintiff's claim for injunctive relief.  At the July 23, 2012 hearing, however, Plaintiff agreed that its claim for injunctive relief is moot in light of the parties' November 4, 2008 Stipulation in which Defendant agreed not to initiate arbitration under the Agreement or seek an Anti-Suit Injunction in the English courts "unless and until this Court grants a Motion to Compel Arbitration and/or Motion to Dismiss to be filed by Defendant," Doc. No. 15 at 2-3, the March 19, 2009 Order, and the July 26, 2011 Opinion.  The court therefore DEEMS MOOT the parties' arguments regarding Defendants' Answer responding to Plaintiff's claim for injunctive relief.

based on the Agreement and the Limitation of Liability Act.[4]  The court addresses

these arguments in turn.

## A.      Affirmative Defenses Based on the Agreement

Plaintiff argues that Defendant's affirmative defenses relating to the

Agreement and its arbitration provision are immaterial, impertinent, redundant, and

insufficient pursuant to the law of the case doctrine.  Specifically, Plaintiff asserts

that the March 19, 2009 Order and the July 26, 2011 Opinion both determined that

Plaintiff's claim for gross negligence is not arbitrable under the Agreement such

that these affirmative defenses must be stricken.  The court agrees.

### 1.     *Law of the Case Framework*

The law of the case doctrine is a judicial invention designed to aid in

the efficient operation of court affairs.  *United States v. Thrasher*, 483 F.3d 977,

981 (9th Cir. 2007) (citing *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th

Cir. 1993)).  "Under the 'law of the case' doctrine, a court is ordinarily precluded

from reexamining an issue previously decided by the same court, or a higher court,

in the same case." *United States v. Jingles*, 682 F.3d 811, 816-17 (9th Cir. 2012)

(quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)); *see also*

---

[4]  The court therefore GRANTS Plaintiff's Motion to Strike Defendant's seventeenth
affirmative defense.

*United States v. Park Place Assoc.*, 563 F.3d 907, 925 (9th Cir. 2009) (stating that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))). For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in the previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). Further, under the law of the case doctrine, a party may neither "revisit theories that it raises but abandons," nor "offer up successively different legal or factual theories that could have been presented in a prior request for review." *Sec. Investor Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996) (quotations and citations omitted).

Although application of the doctrine is discretionary, *id.*, a court abuses its discretion in applying this doctrine if: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (citations omitted); *see also Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (listing additional factors as including whether other changed circumstances exist, or a manifest injustice would otherwise result).

14

## 2.    *Application*

Defendant raises as affirmative defenses that it (1) may take the benefit of any arbitration or forum selection clause in the Agreement, Doc. No. 41, ¶ 41 (fifteenth affirmative defense); (2) is entitled to any defenses under the Agreement and/or English law; *id.* ¶¶ 38, 39 (twelfth and thirteenth affirmative defenses); and (3) complied with all standards of care under the Agreement. *Id.* ¶ 46 (twentieth affirmative defense).  In short, Defendant asserts through these affirmative defenses that the Agreement governs the parties' dispute.  Given that the March 19, 2009 Order and the July 26, 2011 Opinion have already held that the Agreement is inapplicable to Plaintiff's claims, the court finds that the law of the case doctrine precludes Defendant from raising these affirmative defenses.

The Motion to Compel Arbitration presented the issue of whether the Agreement applies to Plaintiff's gross negligence claim -- *i.e.*, whether Plaintiff's gross negligence claim "arises under" the Agreement such that it is subject to arbitration.  Both the March 19, 2009 Order and the July 26, 2011 Opinion rejected that the gross negligence claim arises under the Agreement.  Rather, both decisions explained that the breach of duty alleged in Plaintiff's gross negligence claim has an independent basis separate from any duties that Defendant had under the Agreement.

15

For example, the March 19, 2009 Order explained:

> [T]he mere fact that Plaintiff's claims stem from Defendant's salve of the Vessel pursuant to the Agreement is not sufficient to make them related to the parties' performance under the Agreement.  The fact finder need not determine what the Agreement required Defendant to do or whether Defendant adequately performed under the Agreement.  Indeed, Plaintiff is not alleging that Defendant breached the Agreement in any respect.

607 F. Supp. 2d at 1191; *see also Cape Flattery*, 647 F.3d at 924 (explaining that the dispute does not turn on interpretation of or performance under the Agreement).  The March 19, 2009 Order further explained that any argument by Defendant that it was merely following the terms of the Agreement would not shield Defendant from liability for gross negligence:

> The court also recognizes that even if the Agreement required Defendant to take care in salving the Vessel, the Agreement could not change Defendant's liability for any gross negligence -- a party cannot contract out of liability based on gross negligence.  *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016 (9th Cir. 1999) (finding that "a party to a maritime contract should not be permitted to shield itself contractually from liability for gross negligence").

607 F. Supp. 2d at 1190 n.12.

There is no reason that this conclusion -- that the Agreement is not relevant in determining Plaintiff's claim for gross negligence -- should not apply

equally to Defendant's affirmative defenses as it does to Defendant's Motion to

Compel Arbitration.  The March 19, 2009 Order and July 26, 2011 Opinion were

the result of considerable time and resources expended by not only the parties, but

also this court and the Ninth Circuit, and to allow Defendant to reopen the door to

the issues decided in these rulings would run wholly counter to the efficient

administration of justice.  Further, none of the reasons *not* to apply the law of the

case doctrine applies -- the March 19, 2009 Order was affirmed by the July 26,

2011 Opinion, there is no intervening controlling authority making reconsideration

appropriate, and the evidence has not changed.  *See Gonzalez*, 677 F.3d at 389 n.4

(outlining circumstances where applying law of the case would be an abuse of

discretion).  The court therefore exercises its discretion to find that the law of the

case doctrine applies to prevent Defendant from asserting affirmative defenses

based on the Agreement.

　　　　　In opposition, Defendant does not dispute that its affirmative defenses

raise the same issue as decided by the March 19, 2009 Order and July 26, 2011

Opinion.  Rather, Defendant argues that the parties did not conduct discovery prior

to the March 19, 2009 Order and the July 26, 2011 Opinion such that Plaintiff has

failed to establish that the Agreement "can have no possible bearing upon the

subject matter of the litigation."  *See Clark*, 231 F.R.D. at 406 (explaining when a

17

matter can be stricken pursuant to Rule 12(f)).  Defendant summarily opines that

discovery may establish that (1) Plaintiff intended for the present dispute to be

resolved through arbitration in London, and (2) Plaintiff's claim for gross

negligence does in fact "arise under" the Agreement and is subject to arbitration.

Doc. No. 83, Def.'s Opp'n at 12.  The court rejects this argument.

      Despite these clear rulings by this court and the Ninth Circuit,

Defendant asks the court to leave the door open to allow Defendant to explore a

new theory on how to attack these holdings -- *i.e.*, that the parties agreed to

arbitrate all disputes despite the Agreement's clear language and/or that the parties

had an agreement different than the written one set forth in the Agreement.  The

law the case doctrine prevents what Defendant proposes -- where Defendant

already had the opportunity to fully and fairly litigate the issue of whether the

parties' dispute arises under the Agreement, the law of the case doctrine prevents

Defendant from offering new theories going to the same issue it already litigated.

*See, e.g.*, *Vigman*, 74 F.3d at 937 (stating that the law of the case doctrine prevents

a litigant from "offer[ing] up successively different legal or factual theories that

could have been presented in a prior request for review"); *see also Peoples v.

United States*, 403 F.3d 844, 846-47 (7th Cir. 2005) (explaining that the district

court found that the law of the case doctrine "blocks new theories as well as old

18

ones," which "ensure[s] that the parties marshal all of their facts and arguments so that a dispute may be resolved in one pass, and to conserve judicial resources"); *Gould, Inc. v. United States*, 67 F.3d 925, 931 n.5 (Fed. Cir. 1995) ("To allow the government to make new arguments regarding the same grounds for relief would violate the purpose of the law of the case doctrine."); *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 234 (7th Cir. 1988) ("Again, same issue, new arguments, none of which implicates an exception to the law of the case doctrine. The prior panel's finding precludes review of any new factual arguments, and Sterling's new legal argument is not based on any new controlling authority.").

There is no exception to the law of the case doctrine for what Defendant proposes -- that discovery *might* pan out on an alternative theory that a litigant *could* have presented previously when the court addressed the issue in the first instance. Nothing prevented Defendant from raising the argument that the parties agreed to arbitrate despite the Agreement's clear language and/or that the parties had an agreement different than the written one set forth in the Agreement. Instead, Defendant filed its Motion to Compel Arbitration arguing that parties' dispute was governed by the plain language of the Agreement -- Defendant asserted that "it is absolutely clear that [Plaintiff's] alleged claims arose from [Defendant's] performance of its contractual obligations, and are governed by the

terms and conditions of the Agreement, and thus plainly 'arise under' the

Agreement."  Doc. No. 19-2, Motion to Compel at 1-2.  Certainly, if the parties'

agreement was not fully embodied in the written Agreement, Defendant would

have known such fact before it brought its Motion to Compel and could have

presented evidence regarding the full scope of the parties' agreement.  And nothing

forced Defendant to file its Motion to Compel -- if Defendant believed there was

any ambiguity, it could have sought discovery before bringing its Motion.

Defendant took *neither* of these steps, and instead asked the court to determine the

applicability of the Agreement based on the purely legal question of whether

Plaintiff's claim for gross negligence falls within the scope of the plain words of

the arbitration provision providing that parties agree to arbitrate any disputes

"arising under" the Agreement in London under English Law.[5]

        The court will not leave the door open to an alternative theory that

Defendant could have -- but clearly did not -- present in its first Motion.  The law

of the case doctrine exists for this precise reason -- to prevent litigants from taking

---

[5] Defendant likely did not seek discovery because the Agreement lacks any ambiguity. Defendant offers no explanation, other than its wholly speculative hope (and the fact that its Motion to Compel Arbitration was denied), as to why it believes that discovery might show that the parties intended to arbitrate this dispute.  "District courts need not condone the use of discovery to engage in 'fishing expedition[s],'" *Rivera v. NIBCO, Inc*., 364 F.3d 1057, 1072 (9th Cir. 2004), and the court will certainly not condone one in this action where Defendant already had the opportunity to fully litigate this issue.

a "second bite" of the apple.  *See Jingles*, 682 F.3d at 819 ("Jingles had his bite at the apple, and we will not give him a second bite unless one of the exceptions to the law of the case doctrine applies.").  Indeed, to allow Defendant a second bite of the apple in this action would be especially unfair where over *three years* have passed while Defendant has argued that the dispute is arbitrable pursuant to the Agreement and never presented this alternative argument.

The court therefore GRANTS Defendant's Motion to Strike as to Defendant's twelfth, thirteenth, fifteenth, and twentieth affirmative defenses.  This Order does not, however, preclude Defendant from later seeking to amend its answer to assert these affirmative defenses *if* it has a supportable basis to assert that one of the exceptions to the law of the case doctrine applies.  But at this time, Defendant offers no basis for why it believes that an exception might apply (whether now or in the future), and the court will not allow Defendant to assert defenses based on blind hope where Defendant has already had the opportunity to litigate the issue.[6]

---

[6]  The court recognizes that in its Opposition, Defendant seeks leave to amend its Answer pursuant to Federal Rule of Civil Procedure 15(a).  Defendant also submitted with its Opposition a proposed Amended Answer with an affirmative defense (1) recognizing that the March 19, 2009 Order and July 26, 2011 Opinion held that Plaintiff's claims do not involve the interpretation or performance of the Agreement; but nonetheless (2) reserving Defendant's right to seek relief under the Agreement if discovery establishes that Plaintiff's claims involve the interpretation and/or performance of the Agreement.  *See* Doc. No. 83-2 (ninth affirmative

(continued...)

**B.   The Limitation of Liability Act Affirmative Defense**

Defendant's Fourteenth Affirmative Defense asserts that Defendant is "entitled to exoneration from or limitation of liability under the Limitation of Liability Act, 47 U.S.C. §§ 30501, et seq., to any and all of Plaintiff's claims."  In simple terms, the Limitation of Liability Act "limits shipowner liability arising from the unseaworthiness of the shipowner's vessel or the negligence of the vessel's crew unless the condition of unseaworthiness or the act of negligence was within the shipowner's 'privity or knowledge.'"  *In re BOWFIN M/V*, 339 F.3d 1137, 1137 (9th Cir. 2003) (per curiam).  Plaintiff argues that this affirmative defense must be stricken because Defendant has not (and cannot) allege a necessary element of this defense -- that it was an owner of any vessel that caused the damages alleged in the Complaint[7] -- and has therefore failed to allege

---

[6](...continued)
defense).  This proposed Amended Answer is not properly before the court.  If Defendant wishes to file an Amended Answer, it may file an appropriate Rule 15 Motion consistent with this Order (*i.e.*, that absent a supportable basis, Defendant may not seek to relitigate issues already decided (whether through discovery, motion, or otherwise)).

[7]   The parties argue regarding the scope of the term "owner" as used in the Limitation of Liability Act.  Although the court need not resolve this dispute at this time, it appears that Defendant's reliance on *Dick v. United States*, 671 F.2d 724 (2d Cir. 1982), is misplaced.  Although Defendant asserts that *Dick* stands for the proposition that any party who has control or dominion over a vessel is entitled to assert the Limitation of Liability Act, the holding in *Dick* "turns upon the particular statutory scheme involving federal public vessels and the status of Coast Guard Auxiliaries," and does not appear to apply here.  *See Complaint of Chesapeake Shipping, Inc.*, 778 F. Supp. 153, 157 (S.D.N.Y. 1991).

sufficient facts from which the court can infer that Defendant is entitled to the relief sought.

To the extent Plaintiff argues that Defendant does not qualify as a "shipowner" under the Limitation of Liability Act, such argument raises a factual issue inappropriate for determination on a Rule 12(f) motion.  Putting aside this factual question, Plaintiff's remaining argument raises an unsettled issue of law regarding the burden a defendant must carry in pleading an affirmative defense.

The Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Since *Twombly* and *Iqbal*, no circuit to this court's knowledge has addressed whether this plausibility standard applies to affirmative defenses, and district courts have been divided on this issue.  *Compare, e.g.*, *Perez v. Gordon & Wong Law Group, P.C.*, 2012 WL 1029425, at *6 (N.D. Cal. Mar. 26, 2012) (finding that the heightened standard applies to affirmative defenses); *and Dion v. Fulton Friedman & Gullace LLP*, 2012 WL 160221, at *2-3 (N.D. Cal. Jan. 17, 2012) (explaining that a majority of district courts have extended *Twombly* and *Iqbal* to affirmative defense pleading); *with Kohler v. Islands Restaurants, LP*, 280 F.R.D. 560, 566 (S.D. Cal. 2012) (declining to extend

23

the *Twombly* and *Iqbal* pleading standards to affirmative defenses); *and J & J*

*Sports Prods., Inc. v. Scace*, 2011 WL 2132723, at *1 (S.D. Cal. May 27, 2011)

(same).

District courts holding that the heightened standard applies to

affirmative defenses reason as follows:

> Rule 8's requirements with respect to pleading defenses
> in an answer parallels the Rule's requirements for
> pleading claims in a complaint. *Compare* (a)(2) "a short
> and plain statement of the claim showing that the pleader
> is entitled to relief", *with* (b)(1) "state in short and plain
> terms its defenses to each claim asserted against it". Rule
> 8(b)(2) further provides with respect to "denials" that
> they "must fairly respond to the substance of the
> allegations." The court can see no reason why the same
> principles applied to pleading claims should not apply to
> the pleading of affirmative defenses which are also
> governed by Rule 8. "Applying the standard for
> heightened pleading to affirmative defenses serves a
> valid purpose in requiring at least some valid factual
> basis for pleading an affirmative defense and not adding
> it to the case simply upon some conjecture that it may
> somehow apply." [*Hayne v. Green Ford Sales, Inc.*, 263
> F.R.D. 647, 650 (D. Kan. 2009; *see also CTF Dev., Inc.
> v. Penta Hospitality, LLC.*, 2009 WL 3517617, at *7-8
> (D. Utah Oct. 26, 2009)]. Applying the same standard
> will also serve to weed out the boilerplate listing of
> affirmative defenses which is commonplace in most
> defendants' pleadings where many of the defenses
> alleged are irrelevant to the claims asserted.

*Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d

1167, 1172 (N.D. Cal. 2010).

Although the court recognizes that many district courts follow this reasoning, the court finds the reasoning of those courts declining to extend *Twombly* and *Iqbal* more persuasive.  First, *Twombly* and *Iqbal* address claims for relief under Rule 8(a)(2), which requires that a claim for relief provide "a short and plain statement of the claim *showing* that the pleader is entitled to relief." (emphasis added).  In comparison, "[s]tating an affirmative defense under Rule 8(c) . . . does not require the pleader to 'show' entitlement to its defense."  *Kohler*, 280 F.R.D. at 566.  Rather, Rule 8(c) merely requires that a party "affirmatively state any avoidance or affirmative defense."[8]  Fed. R. Civ. P. 8(c); *See also Iqbal*, 556 U.S. at 679 (drawing the distinction that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]"-- "that the pleader is entitled to relief").

Second, the Ninth Circuit has described the pleading standard for affirmative defenses as a "fair notice" standard, *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979), and has continued to apply this standard since

---

[8]  Supporting that the differing language between Rule 8(a)(2) and Rule 8(c) should be accorded some meaning is that the drafters of the Federal Rules of Civil Procedure crafted Rules that applied equally to both claims and affirmative defenses.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Spradley v. Dugger*, 825 F.2d 1566, 1567 (11th Cir. 1987) (applying Rule 9(b) to affirmative defense)

*Twombly* and *Iqbal*.  *See Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1023

(9th Cir. 2010); *see also Kohler*, 280 F.R.D. at 566.

      Third, a plaintiff has much more time to investigate and draft a

complaint as compared to a defendant who must answer it (usually within twenty-

one days, *see* Fed. R. Civ. P. 12(a)(1)(A)(i)).  Indeed, unlike a complaint,

affirmative defenses require no response.  As a result, "[w]hatever one thinks of

*Iqbal* and *Twombly*, the 'plausibility' requirement that they impose is more fairly

imposed on plaintiffs who have years to investigate than on defendants who have

21 days."  *Memory Control Enter., LLC v. Edmunds.com, Inc.*, 2012 WL 681765,

at *5 (C.D. Cal. Feb. 8, 2012) (quoting *Wells Fargo & Co. v. United States*, 750 F.

Supp. 2d 1049, 1051 (D. Minn. 2010)); *see also Kohler*, 280 F.R.D. at 566;

*Holdbrook v. SAIA Motor Freight Line, LLC*, 2010 WL 865380, at *2 (D. Colo.

2010).

      Applying this reasoning, Defendant's fourteenth affirmative defense

that it is "entitled to exoneration from or limitation of liability under the Limitation

of Liability Act" gives Plaintiff fair notice of the defense.[9]  The court therefore

---

    [9]  In Opposition, Plaintiff relies on *Grindle v. Fun Charters, Inc.*, 962 F. Supp. 1284, 1288 (D. Haw. 1996), for the proposition that Defendant must meet the same requirements of asserting the Limitation of Liability Act as a defense, as if it had asserted it as an affirmative claim.  Contrary to Plaintiff's argument, *Grindle* did not address the pleading requirements of asserting a Limitation of Liability Act defense.  Rather, "the only issue before [*Grindle* was]

(continued...)

DENIES Plaintiff's Motion to Strike Defendant's fourteenth affirmative defense.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS in part and DENIES in part Defendant's Motion to Strike Allegations and Affirmative Defenses.  The court STRIKES the Answer's twelfth, thirteenth, fourteenth, fifteenth, and twentieth affirmative defenses.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 31, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Cape Flattery Ltd. v. Titan Marine LLC*, Civ. No. 08-00482 JMS/KSC, Order Granting in Part and Denying in Part Plaintiff's Motion to Strike Allegations and Affirmative Defenses in Defendant Titan Maritime, LLC, dba Titan Salvage, a Crowley Company's Answer [Doc. 61] to Complaint of Plaintiff Cape Flattery Limited

---

[9](...continued)
whether it has the jurisdiction to hear Defendants' limitation defense."  962 F. Supp. at 1286. Although *Grindle* also determined that the defendant asserting this defense was required to post a bond equal to the value of the vessel, *id.* at 1288, whether Defendant must post a bond in this action is not currently before the court.